## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **JOHN DOE**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**AYLO HOLDINGS USA CORP., AYLO USA, INC.,** and **AYLO BILLING LIMITED, collectively, d/b/a Pornhub**,<br><br>Defendants. | Case No. 1:25-cv-02106<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

John Doe ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Aylo Holdings USA Corp., Aylo USA, Inc., and Aylo Billing Limited, collectively d/b/a Pornhub ("Aylo" or "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1.      This class action arises from Defendants' failure to protect highly sensitive data.

2.      Defendants own and operate some of the other largest pornography websites in the world, including Pornhub.com.

3.      As such, Defendants store a litany of highly sensitive personal identifiable information ("PII" or "Private Information") about their current and former customers. But

1

Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in a data breach (the "Data Breach").

4.    In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals roam undetected for at least three days and steal their current and former customers' Private Information.

5.    Upon information and belief, this cybersecurity incident compromised the Private Information of Defendants' current and former customers.[1]

6.    On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train their employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's Private Information. In short, Defendants' failures placed the Class's Private Information in a vulnerable position—rendering them easy targets for cybercriminals.

7.    Plaintiff is a customer of Defendants and a Data Breach victim. He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

8.    The exposure of one's Private Information to cybercriminals is a bell that cannot be unrung. Before this data breach, the private information of Defendants' customers was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

9.    Plaintiff, John Doe, is a natural person and resident of Williams, California where he intends to remain.

---

[1]PCMag, *Pornhub Premium Members' Search and Viewing Activity Stolen by Hackers,* https://www.pcmag.com/news/pornhub-premium-members-search-and-viewing-activity-stolen-by-hackers/ (last visited Dec. 17, 2025).

10.    Defendant Aylo USA Incorporated, doing business under the name Pornhub, is a Delaware corporation conducting business throughout the United States that maintains its principal place of business at 610 Brazos St., Suite 500, Austin, TX 78701.

11.    Defendant Aylo Holdings USA Corp, doing business under the name Pornhub, is a foreign entity conducting business throughout the United States through Aylo USA Incorporated – which maintains its principal place of business at 610 Brazos St., Suite 500, Austin, TX 78701.

12.    Defendant Aylo Billing Limited, doing business under the name Pornhub, is a foreign entity conducting business throughout the United States through Aylo USA Incorporated – which maintains its principal place of business at 610 Brazos St., Suite 500, Austin, TX 78701.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendants are citizens of different states. And there are over 100 putative Class Members.

14.    This Court has personal jurisdiction over Defendants because their principal place of business is in Texas, they regularly conduct business in Texas, and have sufficient minimum contacts in Texas.

15.    Venue is proper in this Court because Defendants' principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

***Defendants Collected and Stored the Private Information of Plaintiff and the Class***

16.     Defendants own and operate Pornhub.com and some of the other largest and most popular pornography websites in the world.

17.     As part of their business, Defendants receive and maintain the Private Information of thousands of their current and former customers.

18.     In collecting and maintaining the Private Information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

19.     Under state and federal law, businesses like Defendants have duties to protect the Private Information in their custody and to notify owners of said Private Information about data breaches.

20.     Defendants recognize these duties, promising in their "Privacy Policy" that:

a.      "We respect your privacy and are committed to protecting your personal data."[2]

b.      "Where we no longer need to process your personal information for the purposes set out in this Privacy Notice, we will delete your personal information from our systems."[3]

21.     Despite acknowledging the risks of cyberattacks and recognizing their duty to do so, on information and belief, Defendants have not implemented reasonably cybersecurity safeguards or policies to protect  customers' Private Information or trained their IT or data security employees, and agents to prevent, detect, and stop breaches of their systems. As a result,

---

[2] *See* Privacy Notice, at https://www.pornhub.com/info/privacy (last visited Dec. 17, 2025).
[3] *Id.*

Defendants leave significant vulnerabilities in their systems for cybercriminals to exploit and gain access to customers' Private Information.

***Defendants' Data Breach***

22.    On information and belief, Defendants collect and maintain their customers' unencrypted Private Information in their computer systems.

23.    In collecting and maintaining Private Information, Defendants implicitly agreed that it will safeguard the data using reasonable means according to state and federal law.

24.    An unauthorized third party gained access to and obtained files containing Plaintiff's and Class Members' Private Information that was provided to and collected by Defendants as a condition of receiving Defendants' services.[4]

25.    On December 12, 2025, Defendants posted a notice regarding the Data Breach on Pornhub's website, stating, "[a] recent cybersecurity incident involving data from a third-party data analytics service provider has impacted some Pornhub Premium users."[5]

26.    Concerningly, Defendants admitted that cybercriminals actually stole customer data, stating, "[t]he unauthorized party was able to extract a limited set of analytics events for some users."[6]

27.    In their website notice, Defendants acknowledged the imminent risks that victims of the Data Breach now face, as it "encourage[d] all users to remain vigilant by monitoring their accounts for any suspicious emails or unusual activity."[7]

---

[4] PCMag, *Pornhub Premium Members' Search and Viewing Activity Stolen by Hackers,* https://www.pcmag.com/news/pornhub-premium-members-search-and-viewing-activity-stolen-by-hackers/ (last visited Dec. 17, 2025).
[5] Pornhub, Cybersecurity Incident 2025, https://help.pornhub.com/hc/en-us/articles/47334442459283-Important-Message-From-Pornhub (last visited December 21, 2025)
[6] *Id.*
[7] *Id.*

28.     Upon information and belief, the Private Information compromised as a result of the Data Breach includes highly sensitive and confidential consumer information

29.     Despite this, Defendants have yet to begin formally notifying victims that their Private Information had been compromised and stolen during the Data Breach.

30.     Because of Defendants' Data Breach, the sensitive Private Information of Plaintiff and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class Members.

31.     Concerningly, the notorious cybercriminal group ShinyHunters claimed credit for this attack.[8]

32.     ShinyHunters reportedly has access to 94GB of Defendants' Premium customers' data, including viewing habits and over 200 million records of personal information, which it threatened to publish if a ransom was not paid by Defendants.[9]

33.     Upon information and belief, ShinyHunters shared some of the stolen data with Bleeping Computer, which included customers' email addresses, locations, viewing history, download activity, and keywords associated with watched videos.[10]

34.     ShinyHunters is "one of the most prolific data theft groups operating today" and it focuses on "exfiltration valuable customer and corporate data, which is then monetized through ransom demands or underground sales."[11]

---

[8] PCMag, *Pornhub Premium Members' Search and Viewing Activity Stolen by Hackers,* https://www.pcmag.com/news/pornhub-premium-members-search-and-viewing-activity-stolen-by-hackers/ (last visited Dec. 17, 2025).
[9] *Id.*
[10] BleepingComputer, *PornHub extorted after hackers steal Premium member activity data,* https://www.bleepingcomputer.com/news/security/pornhub-extorted-after-hackers-steal-premium-member-activity-data/ (last visited December 21, 2025).
[11] DigitalXRaid, *ShinyHunters Cyber Attacks Explained: What IT and Security Leaders Need to Know*, https://www.digitalxraid.com/blog/shinyhunters-cyber-attacks-explained/ (last visited December 21, 2025).

35.     Ransomware groups can monetize stolen Private Information and sell it on the dark web as part of a full identity profile.[12] Buyers can then use that information to conduct different types of identity theft or fraud, such as filing a fake tax return, applying for a fraudulent mortgage or opening a bank account while impersonating the victim.[13]

36.     And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[14]

37.     Thus, Plaintiff's and the Class's stolen Private Information has already been published by cybercriminals on the Dark Web.

***Plaintiff's Experiences and Injuries***

38.     Plaintiff John Doe is a customer of Defendants, having enrolled in a Premium subscription with Pornhub. Upon information and belief, Defendants acquired Plaintiff's Private Information as a result of Plaintiff's enrollment in a premium subscription with Defendants.

39.     Thus, Defendants obtained and maintained Plaintiff's Private Information.

40.     As a result, Plaintiff was injured by Defendants' Data Breach.

41.     Plaintiff is very careful about the privacy and security of his Private Information. He does not knowingly transmit his Private Information over the internet in an unsafe manner. Plaintiff is careful to store any documents containing his Private Information in a secure location.

---

[12] Anthony M. Freed, *Which Data Do Ransomware Attackers Target for Double Extortion?*, MALICIOUSLIFE BY CYBEREASON, https://www.cybereason.com/blog/which-data-do-ransomware-attackers-target-for-double-extortion (listed visited December 21, 2025).
[13] *Id*.
[14] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

42.     Plaintiff provided his Private Information to Defendants and trusted the company would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continues to maintain Plaintiff's Private Information and has a continuing legal duty and obligation to protect that Private Information from unauthorized access and disclosure.

43.     Plaintiff reasonably understood that a portion of the funds he paid for services would be used to pay for adequate cybersecurity and protection of Private Information.

44.     Thus, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

45.     Through their Data Breach, Defendants compromised Plaintiff's Private Information.

46.     Plaintiff has spent—and will continue to spend—significant time and effort researching the Data Breach and monitoring his accounts to protect himself from identity theft.

47.     Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[15]

48.     Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

49.     Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond

---

[15] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited November 7, 2025).

allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

50.     Plaintiff suffered actual injury from the exposure, theft, and dissemination of his Private Information on the dark web—which violates his rights to privacy.

51.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his Private Information. After all, Private Information is a form of intangible property— property that Defendants were required to adequately protect.

52.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's Private Information right in the hands of criminals.

53.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

54.     Today, Plaintiff has a continuing interest in ensuring that his Private Information— which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

55.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[16] Therein, Cisco reported the following:

>     a.     "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer

---

[16] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, Cisco, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited December 21, 2025).

respondents saying they won't purchase from an organization they don't trust with their data."[17]

b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[18]

c.    89% of consumers stated that "I care about data privacy."[19]

d.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[20]

e.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[21]

f.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[22]

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

56.    Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

a.    loss of the opportunity to control how their Private Information is used;

b.    diminution in value of their Private Information;

---

[17] *Id*. at 3.
[18] *Id*.
[19] *Id*. at 9.
[20] *Id*.
[21] *Id*.
[22] *Id*. at 11.

    c.    compromise and continuing publication of their Private Information;

    d.    out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

    e.    lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

    f.    delay in receipt of tax refund monies;

    g.    unauthorized use of their stolen Private Information; and

    h.    continued risk to their Private Information—which remains in Defendants' possession—and is thus as risk for futures breaches so long as Defendants fail to take appropriate measures to protect the Private Information.

57.    Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen Private Information can be worth up to $1,000.00 depending on the type of information obtained.

58.    The value of Plaintiff and Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

59.    It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the Private Information far and wide.

60.    One way that criminals profit from stolen Private Information is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and

combining two sources of data—first the stolen Private Information, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

61.     The development of "Fullz" packages means that the Private Information exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

62.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class Members' stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

63.     Defendants disclosed the Private Information of Plaintiff and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Private Information of Plaintiff and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

64.     Defendants' failure to promptly and properly notify Plaintiff and Class Members of the Data Breach exacerbated Plaintiff and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Knew—Or Should Have Known—of the Risk of a Data Breach***

65.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

66.     In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[23]

67.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation's ("FBI") 2024 Internet Crime Report details that reported losses from internet crime exceeded $16 billion in 2024 – a 33% increase from the prior year. [24]

68.     This readily available and accessible information confirms that, prior to the Data Breach, Defendants knew or should have known that (i) ransomware actors were targeting entities such as Defendants, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendants, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

69.     In light of the information readily available and accessible on the internet before the Data Breach, Defendants, having elected to store the unencrypted Private Information of thousands of their current and former customers  in an Internet-accessible environment, had reason to be on guard for the exfiltration of the Private Information and Defendants' type of business had cause to be particularly on guard against such an attack.

70.     Before the Data Breach, Defendants knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' Private Information could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in

---

[23] *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[24] FBI National Press Office, *FBI Releases Annual Internet Crime Report,* (Apr. 23, 2025), https://www.fbi.gov/news/press-releases/fbi-releases-annual-internet-crime-report.

today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendants.

71.    Prior to the Data Breach, Defendants knew or should have known that they should have encrypted their customers' Social Security numbers and other sensitive data elements within the Private Information to protect against their publication and misuse in the event of a cyberattack.

72.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

***Defendants Failed to Follow FTC Guidelines***

73.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

74.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[25]  The FTC declared that, *inter alia*, businesses must:

    a.    protect the personal customer information that they keep;

    b.    properly dispose of personal information that is no longer needed;

    c.    encrypt information stored on computer networks;

    d.    understand their network's vulnerabilities; and

    e.    implement policies to correct security problems.

---

[25] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

75.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

76.    Furthermore, the FTC explains that companies must:

a.    not maintain information longer than is needed to authorize a transaction;

b.    limit access to sensitive data;

c.    require complex passwords to be used on networks;

d.    use industry-tested methods for security;

e.    monitor for suspicious activity on the network; and

f.    verify that third-party service providers use reasonable security measures.

77.    The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

78.    In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former customers'   data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

79.    Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-

malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

80.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

81.     Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

82.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

83.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following Nationwide Class:

> All individuals residing in the United States whose Private Information was compromised in Aylo's Data Breach, including all those individuals who received notice of the breach.

84.    Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

85.    Plaintiff reserves the right to amend the class definition.

86.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

87.    <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control.

88.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes thousands of individuals.

89.    <u>Typicality</u>. Plaintiff's claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

90.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. Her interests do not conflict with Class Members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

91.    <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

a.    if Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Private Information;

b.    if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if Defendants were negligent in maintaining, protecting, and securing Private Information;

d.    if Defendants breached contract promises to safeguard Plaintiff and the Class's Private Information;

e.    if Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if Defendants' Breach Notice was reasonable;

g.    if the Data Breach caused Plaintiff and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

92.    Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for

18

their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

## FIRST CAUSE OF ACTION
### Negligence
**(On Behalf of Plaintiff and the Class)**

93.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

94.    Plaintiff and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

95.    Defendants owed a duty of care to Plaintiff and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

96.    Defendants have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and the Class could and would suffer if their Private Information was wrongfully disclosed.

97.    Defendants owed these duties to Plaintiff and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices.

After all, Defendants actively sought and obtained Plaintiff and Class Members' Private Information.

98.    Defendants owed—to Plaintiff and Class Members—at least the following duties to:

a.    exercise reasonable care in handling and using the Private Information in their care and custody;

b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c.    promptly detect attempts at unauthorized access;

d.    notify Plaintiff and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

99.    Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

100.    Defendants also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

101.    Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

102.    Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendants with their confidential Private Information, a necessary part of obtaining services from Defendants.

103.    Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

104.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class Members' sensitive Private Information.

105.    Defendants breached their respective duties to Plaintiff and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

106.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

107.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

108.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

109.    Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

110.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

111.    But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class Members would not have been injured.

112.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that their breach would cause Plaintiff and

members of the Class to suffer the foreseeable harms associated with the exposure of their Private Information.

113.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendants hold vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the Private Information —whether by malware or otherwise.

114.    Private Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiff and Class Members' and the importance of exercising reasonable care in handling it.

115.    Defendants improperly and inadequately safeguarded the Private Information of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

116.    Defendants breached these duties as evidenced by the Data Breach.

117.    Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class Members' Private Information by:

    a.    disclosing and providing access to this information to third parties and

    b.    failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

118.    Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiff and Class Members which actually and proximately caused the Data Breach and Plaintiff and Class Members' injury.

119.    Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class Members' injuries-in-fact.

120.    Defendants have admitted that the Private Information of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

121.    As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

122.    And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by the Brain Cipher cybercriminal group or other cybercriminals on the dark web.

123.    Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

124.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

125.    Plaintiff and Class Members either directly contracted with Defendants or Plaintiff and Class Members were the third-party beneficiaries of contracts with Defendants.

126.    Plaintiff and Class Members were required to provide their Private Information to Defendants as a condition of receiving services provided by Defendants. Plaintiff and Class Members provided their Private Information to Defendants in exchange for Defendants' services.

127.    Plaintiff and Class Members reasonably understood that a portion of the funds they paid for services would be used to pay for adequate cybersecurity measures.

128.    Plaintiff and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

129.    Plaintiff and the Class Members accepted Defendants' offers by disclosing their Private Information to Defendants in exchange for services.

130.    In turn, and through internal policies, Defendants agreed to protect and not disclose the Private Information to unauthorized persons.

131.    In their Privacy Policy, Defendants represented that they had a legal duty to protect Plaintiff's and Class Member's Private Information.

132.    Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their Private Information.

133.    After all, Plaintiff and Class Members would not have entrusted their Private Information to Defendants in the absence of such an agreement with Defendants.

134.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendants.

135.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to their form.

136.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

137.    Defendants materially breached the contracts it entered with Plaintiff and Class Members by:

  a. failing to safeguard their information;

  b. failing to notify them promptly of the intrusion into their computer systems that compromised such information.

  c. failing to comply with industry standards;

  d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

  e. failing to ensure the confidentiality and integrity of the electronic Private Information that Defendants created, received, maintained, and transmitted.

138.    In these and other ways, Defendants violated their duty of good faith and fair dealing.

139.    Defendants' material breaches were the direct and proximate cause of Plaintiff's and Class Members' injuries (as detailed *supra*).

140.    And, on information and belief, Plaintiff's Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web.

141.    Plaintiff and Class Members performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

## THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

142.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

143.    This claim is pleaded in the alternative to the breach of implied contract claim.

144.    Plaintiff and Class Members conferred a benefit upon Defendants. After all, Defendants benefitted from (1) using their Private Information to provide services, and (2) accepting payment.

145.    Defendants appreciated or had knowledge of the benefits they received from Plaintiff and Class Members.

146.    Plaintiff and Class Members reasonably understood that Defendants would use adequate cybersecurity measures to protect the Private Information that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

147.    Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information.

148.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

149.    Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class Members' (1) Private Information and (2) payment because Defendants failed to adequately protect their Private Information.

150.    Plaintiff and Class Members have no adequate remedy at law.

151.    Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class Members—all unlawful or inequitable proceeds that it received because of their misconduct.

### FOURTH CLAIM FOR RELIEF
**Invasion of Privacy**
**(On Behalf of the Plaintiff and the Class)**

152.    Plaintiff incorporates all previous paragraphs as if fully set forth herein.

153.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

154.    Defendants owed a duty to their customers, including Plaintiff and the Class, to keep this information confidential.

155.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

156.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendants as part of receiving services, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

157.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

158.    Defendants acted with a knowing state of mind when they permitted the Data Breach because it knew their information security practices were inadequate.

159.    Defendants acted with a knowing state of mind when they failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

160.    Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

161.    As a proximate result of Defendants' acts and omissions, the Private Information of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

162.    Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their Private Information are still maintained by Defendants with their inadequate cybersecurity system and policies.

163.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendants' continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendants' inability to safeguard the Private Information of Plaintiff and the Class.

164.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other members of the Class, also seeks compensatory damages for Defendants' invasion of privacy, which

includes the value of the privacy interest invaded by Defendants, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### FIFTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law (UCL)**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

165.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

166.    Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

167.    Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*. (the "CRA"), and other state data security laws.

168.    Defendant stored the Private Information of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's Private Information secure to prevent the loss or misuse of that Private Information.

169.    Defendant failed to disclose to Plaintiff and the Class that their Private Information was not secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendants had secured their Private Information. At no time were Plaintiff and the Class on notice that their Private Information was not secure, which Defendants had a duty to disclose.

170.    Defendants also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted Private Information.

171.    Had Defendants complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

172.    Defendants' conduct was unlawful, in that it violated the CCPA.

173.    Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, inter alia, Section 5(a) of the Federal Trade Commission Act.

174.    Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

175.    Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Private Information.

176.    Defendants also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

177.    Instead, Defendants made the Private Information of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

178.    As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

179.    For one, on information and belief, Plaintiff's and the Class's stolen Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

180.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

181.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

182.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendants because of its unfair and improper business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**SIXTH CAUSE OF ACTION**
**Violations of the California Consumer Privacy Act ("CCPA")**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the Class)**

183.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

184.    Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Private Information of Plaintiff and the Class. As a direct and proximate result, Plaintiff's and the Class's nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

185.    Defendants are a "business" under the meaning of Civil Code § 1798.140.

186.    Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguards Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold Private Information, including Plaintiff's and Class members' Private

Information. Plaintiff and Class members have an interest in ensuring that their Private Information is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

187.    Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendants' registered service agents, detailing the specific provisions of the CCPA that Defendants have violated and continues to violate. If Defendants cannot cure within 30 days— and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

188.    As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

189.    A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

### SEVENTH CAUSE OF ACTION
**Violation of the California Customer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

190.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

191.    Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the

breach], if the personal information was, *or* is reasonably believed to have been, acquired by an unauthorized person." *Id* (emphasis added).

192.    The Data Breach constitutes a "breach of the security system" of Defendant.

193.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

194.    Defendants knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class but waited months to notify them. Given the severity of the Data Breach, this was an unreasonable delay.

195.    Defendants' unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

196.    Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice. Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Plaintiff and Class Members respectfully request judgment against Defendants and that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.      Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

F.      Awarding attorneys' fees and costs, as allowed by law;

G.      Awarding prejudgment and post-judgment interest, as provided by law;

H.      Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.      Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Dated: December 22, 2025          By:  */s/ Raina C. Borrelli*
                                       Raina C. Borrelli
                                       **STRAUSS BORRELLI PLLC**
                                       One Magnificent Mile
                                       980 N Michigan Avenue, Suite 1610
                                       Chicago IL, 60611
                                       Telephone: (872) 263-1100
                                       Facsimile: (872) 263-1109
                                       raina@straussborrelli.com

                                       *Attorneys for Plaintiff and the Proposed Class*